The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on September 17, 2019, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: September 17, 2019**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 17-15129 |
| | ) | |
| ANDREW R. LAUDATO & | ) | Chapter 7 |
| PAOLA G. LAUDATO, | ) | |
| | ) | Judge Arthur I. Harris |
| Debtors. | ) | |

MEMORANDUM OF OPINION[1]

In this reopened Chapter 7 case, the debtors seek a determination that the Lake County Department of Utilities and the Lake County Treasurer violated the discharge injunction by posting online a statement that included unpaid prepetition water and sewer charges that had become a lien against the debtors' real property under Ohio law. Someone acting on behalf of the mortgage holder apparently saw the online statement and paid the full amount, even though the debtors were no longer personally obligated to pay what remained a secured obligation against their

---

[1] This Opinion is not intended for official publication.

real property. For the reasons that follow, the Court holds that the Lake County Treasurer's actions did not violate the discharge injunction.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

On August 30, 2017, Andrew R. Laudato and Paola G. Laudato ("debtors") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The debtors received a discharge on November 29, 2017 (Docket No. 14). On December 5, 2017, the Court closed the case (Docket No. 16).

On October 8, 2018, the debtors filed a motion to reopen the case for violation of the discharge injunction (Docket No. 17). On December 31, 2018, the debtors filed a motion for sanctions against the Lake County Department of Utilities and the Lake County Treasurer (collectively, "the creditor") for violation of the discharge injunction (Docket No. 21). After the parties submitted joint stipulations of fact and filed their briefs and responses, the Court took the matter under advisement.

2

## STIPULATIONS OF FACT

The parties agreed to have the Court decide this contested matter based on the parties' joint stipulations of fact.

The parties submitted the following stipulations:

1. Debtors received a utilities billing statement from the Lake County Department of Utilities dated July 20, 2017, stating a total amount due of $2,491.32 by August 10, 2017 for water and sewer charges. This billing statement was composed of a balance forward of $2,040.01, and current charges of $451.31. See Exhibit 7.

2. On August 18, 2017, the Lake County Department of Utilities certified Debtors' delinquent water and sewer bill to the Board of Lake County Commissioners, and removed the total amount of $2,040.01 from the water and sewer bill.

3. On August 24, 2017, the Board of Lake County Commissioners adopted a resolution certifying Debtors' unpaid water charges and collection fees in the amount of $1,280.15, and unpaid sewer charges and collection fees in the amount of $1,065.87, to the Lake County Auditor, for a total of $2,346.02. This amount was made up of $2,040.01 of delinquent charges and $306.01 of an administrative fee. See Exhibit 2.

4. The Lake County Auditor's Office received the Resolution of August 24, 2017, and entered the amounts on the tax list and duplicate.

5. On August 30, 2017, Debtors filed their Chapter 7 bankruptcy petition in the above-captioned matter.

6. Debtors listed water and sewer bills owed to the Lake County Department of Utilities in the amount of $2,491.32 in Schedule F of their bankruptcy petition.

7. On November 29, 2017, Debtors received their Chapter 7 discharge, and their no asset case was closed on December 5, 2017.

3

8. On December 7, 2017, the Lake County Department of Utilities adjusted Debtors' utilities bill by removing $772.83 of water and sewer charges.

9. In December 2017, Lorraine M. Fende, Treasurer of Lake County, Ohio, posted an online statement for Debtors' Lake County real estate taxes due for the First Half 2017 in the amount of $2,293.76, which sum included Special Assessments for delinquent water, light and sewer in the total amount of $1,207.60. See Exhibit 8.

10. On December 12, 2017, Debtors' counsel and Lake County counsel first discussed the Debtors' water and sewer bill and possible violation of the automatic stay and/or discharge injunction, and the role of the pre-petition certification. Counsel were unable to resolve the matter.

11. On February 7, 2018, the Lake County Treasurer posted a payment by CoreLogic, a company that is not affiliated with Lake County, Ohio, for the full amount of taxes and assessments due on Debtors' Lake County Real Estate Tax statements for the First Half 2017 in the amount of $2,293.79. See Exhibits 4 and 5.

12. Debtors received their mortgage statement dated February 12, 2018 from Huntington, and it contained a transaction for a real estate tax disbursement of $2,293.79 on 01/24/2018. See Exhibit 9.

13. On June 28, 2018, the Lake County Treasurer posted a payment by CoreLogic for the full amount of taxes and assessments due on Debtors' Lake County Real Estate Tax statement for the Second Half 2017 in the amount of $2,293.76. See Exhibits 4 and 5.

14. On October 8, 2018, Debtors filed their Motion to Reopen Case for Violation of the Discharge Injunction (Doc 17), and the case was reopened by Order entered November 7, 2018 (Doc 19).

15. On December 31, 2018, Debtors filed their Motion to Show Cause to Enforce Discharge Injunction and For Sanctions against Lake County Department of Utilities and Lake County Treasurer in this matter (Doc 21).

16. On January 22, 2019, the Lake County Board of Commissioners and Lake County Treasurer filed their Brief in Opposition to Debtors' Motion to Show Cause (Doc 23).

17. At a hearing held April 9, 2019, the parties agreed to submit this matter to the Court on briefs to determine whether a violation of the automatic stay and/or discharge injunction has occurred, with all other issues held in abeyance pending a decision.

18. The parties stipulate to the authenticity of attached Exhibits 1 through 9 on the issues before the Court in this matter.

## DISCUSSION

The debtors assert that the creditor violated the discharge injunction by posting online a statement that included unpaid prepetition water and sewer charges that had become a lien against the debtors' real property under Ohio law. For the purposes of this memorandum of opinion, the Court will assume that the sewer and water charges are a prepetition, dischargeable debt.

Pursuant to Section 524(a) of the Bankruptcy Code, a discharge:

> (2) operates as an injunction against the commencement or continuation of any action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a)(2). Although the scope of a discharge injunction is broad in order to give debtors a "fresh start," "the discharge injunction does not enjoin a secured creditor from recovering on valid prepetition liens, which, unless modified or avoided, ride through bankruptcy unaffected and are enforceable in accordance

5

with state law." *Canning v. Beneficial Maine, Inc. (In re Canning)*, 706 F.3d 64, 69 (1st Cir. 2013).

A debtor may bring an action in civil contempt if a party violates the discharge injunction of Section 524(a)(2). *In re Humbert*, 567 B.R. 512, 515 (Bankr. N.D. Ohio 2017) (citing *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421–23 (6th Cir. 2000), and *Lover v. Rossman & Co. (In re Lover)*, 337 B.R. 633 (Bankr. N.D. Ohio 2005)). The debtor must prove that the creditor's action violated the discharge injunction and that the creditor had specific knowledge of the bankruptcy discharge. *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015).

If contempt is established, this Court has authority to impose sanctions on offending parties and counsel. *See Adell v. John Richards Homes Bldg. Co., L.L.C., (In re John Richards Homes Bldg. Co., L.L.C.)*, 552 F. App'x 401, 413–14 (6th Cir. 2013) (citing *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996) ("Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct.")); *In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001); *In re French Bourekas, Inc.*, 175 B.R. 517, 525 (Bankr. S.D.N.Y. 1994) (noting that bankruptcy courts possess power to impose sanctions as inherent authority and by virtue of 11 U.S.C. § 105(a)). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Federal courts have held that this provision authorizes bankruptcy courts to impose a variety of sanctions against litigants in response to their wrongful conduct before the court. *In re John Richards Homes Bldg. Co., L.L.C.*, 552 F. App'x at 412. However, a court must exercise care when considering the imposition of sanctions. *In re Downs*, 103 F.3d at 478 ("When a court metes out a sanction, it must exercise such power with restraint and discretion. . . . The sanction levied must thus be commensurate with the egregiousness of the conduct.") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).

Sections 524(a)(2) and 105(a) "authorize a court to impose civil contempt sanctions [for attempting to collect a discharged debt] when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Roth v. Nationstar Mortg., LLC (In re Roth)*, No. 17-1444, 2019 WL 4047509, at *3 (11th Cir. Aug. 28, 2019) (citing *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)). "[A] court may hold a creditor in civil contempt for

7

violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1799.

In Ohio, unpaid water and sewer charges operate like a tax lien on real property when the lien is properly perfected. Pursuant to Ohio Revised Code Section 6117.02(C)(1), when sewer charges are not paid when due, the board of county commissioners may:

> (1) Certify the unpaid rates or charges, together with any penalties, to the county auditor, who shall place them upon the real property tax list and duplicate against the property served by the connection. The certified amount shall be a lien on the property from the date placed on the real property tax list and duplicate and shall be collected in the same manner as taxes, except that, notwithstanding section 323.15 of the Revised Code, a county treasurer shall accept a payment in that amount when separately tendered as payment for the full amount of the unpaid sanitary rates or charges and associated penalties. The lien shall be released immediately upon payment in full of the certified amount.

When water charges are not paid when due, Ohio Revised Code Section 6103.02(G)(1) similarly authorizes the board of county commissioners to certify the unpaid amount to the county auditor and that amount becomes a lien on the property if properly perfected. Therefore, water and sewer charges become liens that creditors can collect on the same as any other tax. *Twin Lakes Resorts, Inc. v. Thousand Adventures of Ohio, Inc.*, No. 2-97-16, 1997 WL 791523, at *3 (3d. Dist. Dec. 18, 1997) ("Finding that the overdue water and sewer charges are

liens which are collectable as any other tax is consistent with the results reached by other courts.").

The creditor in this case secured its debt prior to the debtor filing its petition. The creditor certified the debtors' delinquent bill to the Board of Lake County Commissioners on August 18, 2017. The Board of Lake County Commissioners adopted a resolution certifying the unpaid charges on August 24, 2017, and the Lake County Auditor's office entered the amounts on the tax list and duplicate on August 24, 2017. These actions occurred prior to the debtors' August 30, 2017, bankruptcy filing. Therefore, the water and sewer charges constituted a valid lien on the property that operated like a tax lien as of the date of the debtors' petition, which arguably even came ahead of the mortgage holder's lien. *See Twin Lakes Resorts, Inc.*, 1997 WL 791523, at *3–4. The automatic stay in place pursuant to Section 362 presumably prevented the creditor from making any attempts to collect prior to the debtor receiving a discharge, and the debtors do not assert that the creditor took any action in violation of the automatic stay.

After debtors receive a discharge, creditors cannot attempt to collect on any of the discharged debts. 11 U.S.C. § 524(a). But any valid prepetition lien that is secured by real property continues on the property, despite the debtors no longer being personally obligated for that lien. *In re Canning*, 706 F.3d at 69. Debtors may choose to voluntarily pay the debt that constitutes a lien on their real property,

which debtors sometimes do to keep their real property through refinancing or reaffirming that debt. *See* 11 U.S.C. § 524(f). Creditors may provide information related to and negotiate with the debtor pursuant to these options without violating the discharge injunction so long as the objective effect of the communication or act is not to coerce or harass the debtor into acting a particular way. *Compare Pratt v. GMAC (In re Pratt)*, 462 F.3d 14, 19–20 (1st Cir. 2006) (finding that the creditor's refusal to release the lien was objectively coercive and had the practical effect of eliminating the debtors' surrender option), *with In re Canning*, 706 F.3d at 70 (affirming the bankruptcy court's and the B.A.P.'s rulings distinguishing *Pratt* and failing to find coercion), and *In re Roth*, 2019 WL 4047509, at *4 (recognizing that the debtor had the option to repay the debt and that the "statutory scheme clearly allows for [the creditor] to send potentially helpful informational statements to [the debtor] without simultaneously casting those statements as debt collection"). A communication with the objective effect of pressuring a debtor to repay a discharged debt is prohibited under Section 524. *Roth*, 2019 WL 4047509, at *4. "[T]he line between forceful negotiation and improper coercion is not always easy to delineate, and each case must therefore be assessed in the context of its particular facts." *In re Pratt*, 462 F.3d at 19.

In this case, the debtors have not demonstrated that the creditor was acting in a way that had the objective effect of harassing or coercing the debtors. The

stipulated facts do not indicate that the creditor sent anything directly to the debtors as an attempt to collect. The parties agree that the certified delinquent charges were certified and posted online and that CoreLogic, a company not affiliated with Lake County, paid the full amount of taxes due on the debtors' property. However, nothing in the record indicates that the creditor solicited payment of these charges from either the debtors or CoreLogic aside from the posting of the online statement. The creditor asserts, and no evidence in the record disputes the assertion, that it internally coded the debtor's property with a bankruptcy designation, which prevented the bills from being mailed but still allowed the automatically generated public record of the amount owed to be available online. The posting of the charges on the website combined with both the internal coding of the property with a bankruptcy designation as well as a lack of any direct solicitation by the creditor to collect seem to indicate that the creditor had no intent to coerce or harass the debtors into paying the debt. Therefore, the debtors have not demonstrated that the creditor took any action intended to collect in violation of the discharge injunction.

Although the Court has determined that the posting of the amount owed on the website did not violate the discharge injunction, in the future, the creditor may wish to include a prominent notice on its website that the posting of information is not intended as an act to collect from any debtor on a discharged debt. *Roth*,

11

2019 WL 4047509, at *1 ("The statements included a disclaimer that they were not debt collection, but also included an amount due, due date, and instructions on how to send payment back to [the creditor].").

Finally, even if this Court found that the creditor technically violated the discharge injunction by the online posting of the delinquent charges, the violation would not warrant any sanction. Based on the Supreme Court's recent decision in *Taggart*, sanctions are only available under Section 105 when the "no fair ground of doubt" standard is met. *Roth*, 2019 WL 4047509, at *4. The debtor must prove that "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Taggart*, 139 S. Ct. at 1799. The debtors have not met this standard, and thus contempt sanctions are not appropriate.

## CONCLUSION

For the reasons stated above, the Court holds that the Lake County Department of Utilities and the Lake County Treasurer did not violate the discharge injunction.

IT IS SO ORDERED.